IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**MEDICAL CENTER PHCY, LLC;** **PLAINTIFFS**
**and WINONA DRUGS, LLC,**
**individually, and on behalf of all**
**others similarly situated**

**V.** **NO. 3:25-CV-106-DMB-JMV**

**OPTUMRX, INC.** **DEFENDANT**

**ORDER**

OptumRx, Inc., moves to compel arbitration and to dismiss or stay this case. Because a valid arbitration agreement exists and delegates the question of arbitrability to the arbitrator, arbitration will be compelled and this case will be stayed pending arbitration.

**I**
**Procedural History**

On March 31, 2025, Medical Center Phcy, LLC, and Winona Drugs, LLC, filed a "Class Action Complaint for Declaratory Statutory and Injunctive Relief" against OptumRx, Inc., in the United States District Court for the Northern District of Mississippi, seeking declaratory relief, injunctive relief, and damages for alleged violations of the Mississippi Pharmacy Benefit Prompt Pay Act. Doc. #1. On May 9, OptumRx filed a motion "to compel arbitration of all of Plaintiffs Medical Center Phcy, LLC … and Winona Drugs, LLC['s] three claims, and to dismiss, or in the alternative, stay these proceedings." Doc. #14 at 1. On May 28, Medical Center Phcy voluntarily dismissed its claims against OptumRx. Doc. #20. Winona Drugs responded in opposition to the motion to compel the same day, Doc. #21; and OptumRx replied on June 13, Doc. #25.[1] On August 4, the Court granted OptumRx's motion for leave to file a notice of supplemental authority

---

[1] The Court granted the parties' joint motion for an extension to respond and reply. Doc. #19.

with respect to the motion to compel. Doc. #27. OptumRx filed its notice of supplemental authority the next day. Doc. #28.

## II
## Arbitration and Delegation

The Federal Arbitration Act "provides that written arbitration agreements are generally 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Robertson v. Intratek Comput., Inc.*, 976 F.3d 575, 579 (5th Cir. 2020) (quoting 9 U.S.C. § 2). "A court makes two determinations when deciding a motion to enforce an arbitration agreement. First, the court asks whether there is a valid agreement to arbitrate and, second, whether the current dispute falls within the scope of a valid agreement." *Edwards v. Doordash, Inc.*, 888 F.3d 738, 743 (5th Cir. 2018) (internal citation omitted). But "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 71 (2019). "Thus, a valid delegation clause requires the court to refer a claim to arbitration to allow the arbitrator to decide gateway arbitrability issues." *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 202 (5th Cir. 2016) (citing *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010)). When the party seeking arbitration argues a delegation clause exists, "the court performs the first step—an analysis of contract formation—but the only question, after finding that there is in fact a valid agreement, is whether the purported delegation clause is in fact a delegation clause." *Edwards*, 888 F.3d at 743–44 (cleaned up) (quoting *Kubala*, 830 F.3d at 202).

## III
## Background

OptumRx, Inc., is a pharmacy benefits manager. Doc. #14-1 at 2. Winona Drugs, LLC,

joined OptumRx's network on November 15, 2019, through its pharmacy services administrative organization, Elevate. *Id*. at 4. By doing so, Winona Drugs became subject to Elevate's provider network agreement ("PNA") with OptumRx. *Id*. at 2. OptumRx maintains a Pharmacy Provider Manual—a set of policies and procedures for network pharmacies to follow[2]—that states it is "incorporated into and is a part of [the PNA]." Doc. #14-20 at 3.

The Pharmacy Provider Manual contains an "Alternative Dispute Resolution and Arbitration" section that includes a provision which states:

> Notwithstanding judicial proceedings to confirm, vacate, or enforce an award, the parties acknowledge that neither will have the right to litigate a Dispute in court, and that neither will have a right to a trial by a judge or jury, and the right to discovery is limited. **The parties waive all such rights by agreeing that all disputes must be resolved exclusively in arbitration.**

*Id*. at 128 (emphasis in original). That section of the Pharmacy Provider Manual also contains a provision specifying that "[f]or avoidance of doubt, the arbitrator(s) shall decide any and all questions regarding arbitrability or the formation, scope, validity, and/or interpretation of the parties' agreement to arbitrate." *Id*. at 127.

The Elevate PNA effective December 9, 2014 ("Original PNA") has a dispute resolution section that states, "If the parties are still unable to resolve the Dispute … either party may request that the parties attempt to resolve the dispute through mediation by providing written notice to the other party." Doc. #14-22 at 19. The Original PNA specifies that the Pharmacy Provider Manual is "incorporated herein by reference and made a part hereof; provided, however, if there is any conflict between the terms of this [PNA] and the Pharmacy Manual, the terms and conditions of this [PNA] shall control except to the extent otherwise required by law." *Id*. at 20.

The PNA was amended ("Amended PNA") effective April 1, 2025. Doc. #14-23. The

---

[2] Doc. #14-1 at 3.

Amended PNA contains the following language regarding dispute resolution:

> This arbitration agreement applies to any and all Disputes whenever they arise or arose, including past, present and future Disputes except for any Disputes for which either party has already provided notice.
>
> … **For the avoidance of doubt, the arbitrator(s) shall decide questions regarding arbitrability or the scope, enforceability and/or interpretation of the parties' agreement to arbitrate, but only a court may decide if the parties formed an agreement to arbitrate.**
>
> …
>
> Notwithstanding judicial proceedings to confirm, vacate, or enforce an award … the parties acknowledge that neither will have the right to litigate a Dispute in court, and that neither will have a right to a trial by a judge or jury, and the right to discovery is limited. The parties each waive all such rights by agreeing that all Disputes must be resolved exclusively in arbitration.

*Id.* at PageID 377, 379 (emphasis in original) (paragraph numbering omitted). The Amended PNA specifies that the Pharmacy Provider Manual is "incorporated herein by reference and made a part hereof, provided, however, if there is any conflict between the terms of this [PNA] and the Pharmacy Manual, the terms of the [PNA] shall prevail." *Id.* at PageID 380.

## IV
## Analysis

In seeking to compel arbitration, OptumRx argues that Winona Drugs is "bound by … the Manual and their … PNA[], and the binding arbitration agreements in them" because "the Manual is incorporated into the … PNA[];"[3] and such is required "under the 'direct benefits estoppel' doctrine" and the "doctrine of ratification." Doc. #15 at 14–17. OptumRx further argues that "[b]ecause valid agreements to arbitrate exist, the Court does not need to entertain any further arguments as the parties agreed to delegate threshold questions of arbitrability to arbitrators;" but "[e]ven if the Court were to consider questions about the scope of the arbitration agreements …

---

[3] It appears that OptumRx is referring to the PNA as amended since it argues that the amended PNA's arbitration agreement retroactively applies to Winona Drugs' claims. Doc. #15 at 8–9.

[Winona Drugs'] claims squarely fall within the scope of the parties' agreements in the Manual and PNA[]." *Id*. at 20, 21.

Winona Drugs responds that "the [Original] PNA … that was operative through and including March 31, 2025, did *not* contain an arbitration clause;" "the [Original] PNA also provides that its terms govern in the event of any conflict with [the Pharmacy Provider Manual], which has, for some time, had such a clause; "[s]ince [it] is *not* bound by any arbitration agreement, the Court need not reach the question of whether the arbitration clause in the [Pharmacy Provider Manual] (or in [the Amended] PNA) is enforceable [b]ut if the Court were to address that question … these clauses are procedurally and substantively unconscionable … [and] OptumRx's unclean hands preclude its assertion of the equitable remedy of specific enforcement of any contractual arbitration clause." Doc. #22 at 2–3 (emphases in original).

OptumRx replies that "[b]ecause [Winona Drugs] has not directly challenged [the] delegation clause [in the Amended PNA], well-settled law dictates that [Winona Drugs'] challenges to the arbitration terms in the [Amended PNA] must be decided by an arbitrator[, b]ut even if the Court were to reach those issues, they should all be rejected [because Winona Drugs] presents no legitimate basis for avoiding the [Amended PNA's] expressly retroactive arbitration agreement;" "like the [Amended PNA], the Manual has a delegation clause;" and "[i]n any event, [Winona Drugs'] unconscionability arguments as to the arbitration terms in both the [Amended PNA] and Manual fail." Doc. #25 at 1.

### A. Agreement to Arbitrate

The Court first must decide whether there is a valid agreement to arbitrate between OptumRx and Winona Drugs. The question is not "whether there is an agreement to arbitrate *the claim currently before the court*;" instead, "the only issue at the first step is whether there is any

5

agreement to arbitrate any set of claims." *Kubala*, 830 F.3d at 202 (emphasis in original). "Whether [the parties] entered a valid arbitration contract turns on state contract law." *Id*.

The Original PNA specifies that "[t]his Agreement and the rights and obligations of the parties hereunder shall be governed by and construed in accordance with the laws of California, without giving effect to the conflict of law principles thereof." Doc. #14-22 at 22. The excerpts of the Amended PNA in the record do not alter the choice of law provision, *see generally* Doc. #14-23, and the parties do not appear to object to the California choice of law provision in the Original PNA or the Amended PNA. Doc. #15 at 13; Doc. #22 at 6. More, because neither party argues that the California choice of law provision is unenforceable, the Court will apply California law to determine whether there is a valid arbitration agreement.[4]

### 1. Amended PNA

OptumRx argues that "[t]he [Amended] PNA, as of April 1, 2025, contains a broad arbitration agreement applicable to 'any and all Disputes *whenever they arise or arose, including past*, present, and future Disputes except for any Disputes for which either party has already provided notice.'" Doc. #15 at 19 (emphases in original). Winona Drugs responds that the Amended PNA cannot be applied retroactively to "extinguish[] an *already-filed* case that was already pending prior to the effective date" because it "does *not* contain language expressly extending its coverage to *litigation already pending*;" "the retroactivity clause expressly exempts from its coverage disputes as to which 'notice' had previously been given;" and "two days prior to the effective date [it] sent notice to Elevate." Doc. #22 at 14, 15, 16 (emphases in original). OptumRx replies that the issue of whether the arbitration agreement in the Amended PNA applies

---

[4] California law also seems appropriate because OptumRx has "substantial operations in California." Doc. #14-1 at 2; *see Crawford Pro. Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 258 (5th Cir. 2014) ("When the state of the chosen law has some substantial relationship to the parties or the contract, the parties will be held to have had a reasonable basis for their choice.") (quoting Restatement (Second) of Conflicts of Laws § 187(2) cmt.f).

6

here is "for an arbitrator to decide;" and more, "[Winona Drugs'] email to *someone other than [it]* does not qualify as giving [it] notice." Doc. #25 at 4, 5 (emphasis in original).

It is undisputed that the parties are subject to the Amended PNA, which includes an arbitration agreement with a delegation clause. Winona Drugs' argument that the Amended PNA cannot be applied retroactively here concerns whether the arbitration agreement covers its claims, not whether there is a valid arbitration agreement at all. It is up to the arbitrator, not the Court, to determine whether the Amended PNA can be retroactively applied to Winona Drugs' claims in its March 31, 2025, complaint. *See Kubala*, 830 F.3d at 201–02 (issue of whether arbitration agreement with delegation clause applies retroactively to claims at bar is for arbitrator to decide.) And Winona Drugs' argument that the PNA is unconscionable also does not affect whether an arbitration agreement existed. *See Edwards*, 888 F.3d at 746 ("Unconscionability is not a contract formation issue under California law [and] an argument that an entire agreement is unconscionable is a 'contention that must be presented to the arbitrator.'") (quoting *Higgins v. Super. Ct.*, 45 Cal. Rptr. 3d 293, 301 (Cal. Ct. App. 2006)).

### 2. Manual

OptumRx argues that "there is no conflict between the [Amended] PNA and the Manual over arbitration;" and "the terms of the [O]riginal … PNA do not conflict with the Manual's arbitration agreement" because "Winona Drugs easily could have complied with the dispute resolution provisions in both the Manual and [O]riginal … PNA." Doc. #15 at 15–16.

Winona Drugs responds that "[t]he problem with this argument is that the *operative [Original] PNA does not contain a delegation clause, or, even an arbitration clause*;" "the [Original] PNA clearly states that 'if there is any conflict between the terms of this Agreement and the Pharmacy Manual, the terms and conditions of this Agreement shall control except to the extent

7

otherwise required by law;'" and "there cannot plausibly be an enforceable delegation clause without an agreement to arbitrate." Doc. #22 at 8 (emphasis in original). Winona Drugs cites several cases in which "courts, not arbitrators, have decided the question of arbitrability under OptumRx's [Pharmacy Provider Manual] or PNAs," including the Eastern District of Arkansas' opinion in *Lackie Drug Store, Inc. v. OptumRx, Inc. Id.* at 7 (citing No. 4:20CV1515 JM, 2024 WL 505519 (E.D. Ark. Jan. 30, 2024).

OptumRx replies that the "application of both direct benefits estoppel and ratification … result in [Winona Drugs] being bound to the Manual's arbitration agreement, regardless of any supposed conflict with the PNA and make irrelevant any unconscionability arguments;" "[Winona Drugs] is also wrong that the Manual's dispute resolution provision conflicts with the [O]riginal … PNA's dispute resolution provision;" and "there is no genuine dispute that the Manual has a valid arbitration agreement between the parties[, so] the Court's analysis should end here." Doc. #25 at 6, 7, 8. As supplemental authority, OptumRx filed the Eighth Circuit's opinion in *Lackie Drug Store, Inc. v. OptumRx, Inc.*, 143 F.4th 985 (8th Cir. 2025), noting that "the courts in *Lackie* analyzed the same [O]riginal … PNA and OptumRx Provider Manual as are at-issue [here]," and "the Eighth Circuit held that where, as here, there is no direct challenge to the parties' delegation clause, an arbitrator must decide all questions of arbitrability, including whether the [O]riginal … PNA that did not have an arbitration agreement was consistent (or not) with the incorporated Provider Manual that contained an arbitration agreement." Doc. #28 at 1, 3.

The parties here indisputably are subject to the terms of the Pharmacy Provider Manual through the Original PNA and the Amended PNA.[5] Winona Drugs does not argue that the

---

[5] *See* Doc. #22 at 13 ("[Winona Drugs] does not allege that Optum loses here because the [Pharmacy Provider Manual] is not a binding contract.").

8

Amended PNA and the arbitration agreement in the Pharmacy Provider Manual conflict, so it is also undisputed that Winona Drugs is subject to the Pharmacy Provider Manual's arbitration agreement. Whether the Original PNA conflicts with the Pharmacy Provider Manual's arbitration agreement and whether the Original PNA or Amended PNA applies here relate to the applicability of the Pharmacy Provider Manual's arbitration agreement to Winona Drugs' current claims, not to the existence of an arbitration agreement. So, Winona Drugs and OptumRx are subject to a valid arbitration agreement through both the Amended PNA and the Pharmacy Provider Manual.

### B. Delegation Clause

Having found there is a valid arbitration agreement, the Court next must determine "whether the purported delegation clause is in fact a delegation clause—that is, if it evinces an intent to have the arbitrator decide whether a given claim must be arbitrated." *Kubala*, 830 F.3d at 202. "[P]arties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." *Henry Schein*, 586 U.S. at 69 (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

OptumRx argues that the delegation clauses in the Pharmacy Provider Manual and Amended PNA "supply clear and unmistakable evidence of the parties' intent to delegate threshold decisions about arbitrability of [Winona Drugs'] claims to arbitrators." Doc. #15 at 20. Winona Drugs does not specifically argue that the provisions OptumRx characterizes as delegation clauses are not delegation clauses but it cites several cases where courts found that its Manuals and/or PNAs did not evidence clear intent to delegate arbitrability to arbitrators. Doc. #22 at 7 (citing *OptumRx, Inc. v. A&S Drugs LLC*, No. 8:22-CV-00468, 2023 WL 6170802, at *4 (C.D. Cal. Sep. 20, 2023); *Odedra Enters., Inc. v. Super. Ct. of Orange Cnty.*, No. G062698, 2024 WL 3385311 (Cal. Ct. App. July 12, 2024); *Copper Bend Pharmacy, Inc. v. OptumRx*, 2023 IL 220211-U (Ill.

9

App. Ct. 2023); *Prescription Care Pharmacy, LLC v. OptumRx, Inc.*, No. G057279, 2020 WL 4932554, at *5 (Cal. Ct. App. Aug. 24, 2020)).

The relevant portion of the Amended PNA states, "For the avoidance of doubt, the arbitrator(s) shall decide questions regarding arbitrability or the scope, enforceability and/or interpretation of the parties' agreement to arbitrate." Doc. #14-23 at PageID 377 (emphasis omitted). The Pharmacy Provider Manual contains an almost identical provision, as mentioned above. This language clearly delegates the issue of arbitrability to arbitrators, and Winona Drugs does not argue otherwise.[6]

## C. Summary

Because there is a valid arbitration agreement and a delegation clause in both the Pharmacy Provider Manual and the Amended PNA, and because Winona Drugs does not challenge the delegation clause itself,[7] the arbitrator must determine the gateway arbitrability issues. Accordingly, this Court need not determine the scope of the arbitration agreements or address Winona Drugs' unconscionability argument.

## V
## Conclusion

OptumRx's motion to compel arbitration [14] is **GRANTED**. This case is **STAYED** pending arbitration.[8] The parties are **DIRECTED** to report to the Court every ninety days

---

[6] The courts in *A&S Drugs*, *Copper Bend Pharmacy*, *Odedra Enterprises*, and *Prescription Care Pharmacy* all analyzed earlier editions of the Manual and/or PNAs with different purported delegation clauses than those at issue here. *A&S Drugs*, 2023 WL 6170802 at *3; *Copper Bend Pharmacy*, 2023 WL 2964485 at *12–13; *Odedra Enterprises*, 2024 WL 3385311 at *3–4; *Prescription Care Pharmacy*, 2020 WL 4932554 at *5–6.

[7] *See Arnold v. Homeaway, Inc.*, 890 F.3d 546, 554 (5th Cir. 2018) (arbitration should be compelled when "there is a contract between the parties that contains a putative arbitration provision, … the parties have agreed to delegate threshold questions about the arbitration provision to an arbitrator, and [the plaintiff] does not specifically challenge the validity of the delegation clause").

[8] "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending … shall on application of one of the parties stay the trial of the action until such arbitration has been had." 9 U.S.C. § 3. In its motion to compel, OptumRx requested a stay as an alternative to its request for dismissal once arbitration was compelled. Doc. #14 at

regarding the status of arbitration.

      **SO ORDERED**, this 28th day of January, 2026.

                                                **/s/Debra M. Brown**
                                                **UNITED STATES DISTRICT JUDGE**

---

1. Winona Drugs' request in its response for "a stay of this action pending arbitration in the event that the Court grants a motion to compel arbitration of this action" Doc. #22 at 26, is contrary to Local Rule 7(b)(3)(C)'s prohibition that a response may not include a counter-motion. However, it is clear Winona Drugs does not challenge OptumRx's alternative request for a stay.